John C. Gaut, Special Judge,
delivered the opinion of the Court.
The only error in the action of the Court below? insisted upon by the counsel for the plaintiff in error, is, because the Court permitted the Attorney-general to read in evidence to the jury, a certified copy of a paper on file in the office of the Comptroller of the State.
Section 3791, of the Code, provides that “duly certified copies of all records and entries, official bonds, or other papers belonging to any public office, or by authority of law, filed, to be kept therein, áre evidence in all cases.”
It appears from the proof in the record, that James Stephenson and Wyatt Chappel, who were charged with the crime of murder in Hickman County, Tennessee, had fled to the State of Kentucky; and the Governor of Tennessee appointed the plaintiff in error as the agent of this State, to go to the State of Kentucky and demand of the Executive of the State, the arrest and delivery of the bodies of the said Stephenson and Chap-pel, and bring them to this State, and deliver them to the Sheriff and Jailer of said County of Hickman, to be dealt with as the law directed. . This action on the part of the Governor of the, State of Tennessee, was *98 authorized by section 5340, of the Code. And the plaintiff in error, when so appointed by the Governor, was authorized to employ a sufficient guard or escort, to bring said criminals to this State, and to contract such other expenses absolutely required in performing his duties as such agent, by section 5341, of the Code.
It further appears from the proof in this record, that the plaintiff in error, as such agent, on behalf of this State, in the month of December, 1868, employed the prosecutor in this cause, L. L. Bingham, and others to accompany him to the State of Kentucky, to assist in bringing said fugitives from justice, back to the State of Tennessee. The said .Stephenson and Chappell were arrested in the State of Kentucky, and delivered to the plaintiff in error and his said guards, and brought back and put in jail in Hickman County, Tennessee. Thereupon, an account was made out by the Clerk of the Circuit Court of said County of Hickman, for the plaintiff in error and his guards against the State of Tennessee, for their services and expenses. The amount to each guard was put down at $50.50; and the amount to the plaintiff in error was greater, all amounting in the aggregate, to $689.20. Said account, when so made out, was sworn to before said Clerk by the plaintiff in error and. said guards, on the 31st of December, 1868; and thereupon, the plaintiff in error contracted and agreed with the prosecutor, Bingham, and other guards, to bring said account to Nashville, and draw the money from the Treasury of the State, and take it back to Hickman County, and pay to the prosecutor and other guards, their respective amounts due them as *99 put down in said account. He came to Nashville and presented the account to the Governor, who approved it and ordered the same to be paid. Thereupon, said account was filed with the Comptroller, who issued his warrant upon the Treasurer, to pay said amount of $689.20, to the plaintiff in error. The Treasurer paid said sum to the prisoner, who executed his receipt in duplicate for the same, on the 6th of January, 1869, one of which was filed with the Comptroller.
The prisoner returned to Hickman County, and paid the prosecutor $25, alleging that the Comptroller refused to allow the sums charged in said account, and cut it down to $25 for each guard; and that only $370 in all, had been paid to him upon said account.
The prisoner is charged in the indictment, and found guilty by the verdict of the jury, with a fraudulent and felonious breach of trust.
It is made the duty of the Court to decide whether said account, so verified and filed, in the office of the Comptroller of the State, is such a paper as that a certified copy of the same may be read on the trial in the court below, under said section 3791, of the Code. If it was such a paper as belonged to the office of the Comptroller, or by authority of law filed to be kept therein, then a certified copy thereof, is evidence in all cases — criminal as well as civil.
A majority of the Court think that said paper, when filed with the Comptroller, became an office paper and belonged to the office, and without which the Comptroller would have had no authority to issue said warrant to the prisoner upon the Treasurer, for said money. *100 Said paper was the legal voucher of ■ the Comptroller, and it was his duty to file and keep said paper in said office. That it belongs to his office, and he is required in good faith, to keep the same in his office. That the public interest demands that such papers should, at all times, remain in the office of the Comptroller; and that the Legislature wisely provided that certified copies of the same shall be evidence in all cases.
If the prisoner was indicted for forgery or for perjury in some judicial proceeding, then in such a case, the original paper upon which the forgery or perjury was assigned, would have to be produced, and a copy could not be read. But in this case, the account filed in the office of the Comptroller only forms a link in the chain of testimony, to show the amount of money received by the prisoner from the State, and was material to establish the felonious breach of trust charged against him in the indictment; and in such a case a certified copy may be read as evidence against him.
To require the production of the originals in the manifold criminal trials in the State, and also to require the Comptroller to appear in person to identify the original papers, would not only subject the papers of his office to loss and destruction, and jeopardize the public interests and the character of the officer, but it would open the door wide for the escape of guilty criminals.
When papers are produced and filed as evidence on the trial of causes in court, either civil or criminal, they become a part of the record, and cannot . be withdrawn except by consent, with leave of the Court. If *101 the Comptroller and Treasurer of the State were compelled to appear before the courts of the State, with their receipts and vouchers, to identify and prove them on criminal trials, we think the public would sustain loss, without any compensating benefit; and that the Legislature intended, in said section 3791 of the Code, to make certified copies of all papers properly belonging to any public office in the State, evidence on the tiial of all causes.
And this view of the question is not in conflict with that part of the Bill of Rights which provides that the witness shall meet the prisoner face to face. In such cases, the paper is the witness. .And the Code only substitutes a certified copy in the stead of the original paper.
"We think a brief reference to the laws of this State, in relation to the receipt and disbursement of the public money, makes it manifest that said account, filed with the Comptroller by the prisoner, is a paper that belongs to the office, and by authority of law is to be kept therein.
By the Act of 1835, sec. 4, .chapter 27, the Treasurer can pay no money on account of the public, but upon the warrant of the Comptroller, except the salary of the Comptroller; and no money shall be paid out of the Treasury unless the law under which it is claimed expressly 'order the same to be paid out of the Treasury; and the warrant shall be drawn in favor of the person entitled to the claim, and shall show the nature of the claim. The Act of 1835, with the amendments *102 thereto, are brought forward in the Code, in sections 230, 231, 232, 233, 234 and 235.
By which it will be seen that the Treasurer and Comptroller shall select some bank as the depository of the money belonging to the State, into which it shall be deposited. And by section 232, no money shall be drawn from any such bank unless by checks subscribed by the Treasurer and countersigned by the Comptroller. This is the policy adopted by the Legislature of the State to operate as checks upon the Treasurer and Comptroller for the safety of the public money. The last-mentioned section of the Code is re-enacted in section 12 of the Act of March 13, 1868, chapter 79. So it will be observed that the Treasurer can pay out no public money upon the order of the Governor. But the system provided by law is, that when a claim is presented and filed with the Comptroller, authorized by law to be paid out of the public money, the Comptroller issues his warrant upon the Treasurer in favor of the claimant. Upon its presentation, the Treasurer files the warrant in his office, and takes the claimant's receipt in duplicate, and files one in his own office, and delivers the other, with the Governor’s check upon the bank for the amount of money called for in the warrant. When the claimant files the duplicate receipt with the Comptroller, the latter then countersigns the check; and then, and not before, can the claimant draw the money from the bank. The Comptroller and Treasurer are required to keep regular books, and to number all their warrants and checks. ' And the Comptroller’s *103 books must show to whom and on what account the public money is paid out.
We have seen that the Governor was authorized by law to appoint the prisoner the agent of the State, to secure the absconding criminals in the State of Kentucky, and bring them to Tennessee. And as such agent, the prisoner was authorized by law, to employ, on behalf of the State, the guards, and to contract other necessary expenses to carry out the objects of his agency. When said account was made out and properly verified, as was done in this case, and filed with the Comptroller, it was his authority, under said sections 5340 and 5341 of the Code, to issue said warrant in favor of the prisoner. And, we think said account, when filed, is a paper belonging to the Comptroller’s office, and kept there by law, as well as upon the grounds of public policy.
It has been insisted upon by the counsel for th§ prisoner, that by virtue of sections 5339 and 5342 of the Code, the Treasurer was authorized to pay said account to the prisoner, upon the warrant of the Governor; therefore, said account was improperly filed in the office of the Comptroller; and that being so, it is not a paper beloning to the Comptroller’s office. Said sections 5339 and 5342 of the Code, are, in substance, the provisions of the Act of 1805, chapter 44, sections 1 and 2, (C. & N.,) page 365, as amended by the Act of the 27th of January, 1838.
We think that part of the 2d section of the Act of 1805, which authorizes the Governor to draw his warrant upon the Treasurer to pay out any of the public *104 money, has long since been repealed. The case at bar is not a case arising under a reward offered by the Governor for the apprehension of the alleged criminals, but upon the requisition of the Governor of Tennessee upon the Governor of Kentucky, to cause to be arrested and delivered, said fugitives from justice. But if it Avas upon the Governor, we think the provisions of the Act of 1835, and subsequent statutes, repeal that provision of the Act of 1805, so far as it authorized the Treasurer to pay out any of the public money upon the warrant of the Governor.
The 4th section of the Act of 1835 is explicit, that it shall not be lawful for the Treasurer to pay out any money on account of the public but. on the warrant of. the Comptroller, except the salary of the Comptroller. Section 230 of the Code, requires the Treasurer to deposit all the moneys that come to his hands on account of the State in the bank selected as the State depository. Section 231 of the Code, provides that the money so deposited in the bank shall only be checked therefor, to pay the warrants of the Comptroller. Section 12 of the Act of the 13th of March, 1868, provides that no part of the moneys deposited with any of the depositories, under the provisions of this Act, shall be drawn by the Treasurer, except upon the check of the Treasurer, countersigned by the Comptroller. These several provisions of law are so irreconcilable with the provisions of the Act of 1805, brought forward in sections 5339 and 5342 of the Code, that they cannot coexist and stand together; and the latter-mentioned sections are so far repealed . as ■ to inhibit the Treasurer *105 paying out any of the public moneys belonging to the ■State, upon the warrant of the Governor.
The certificate of G. W. Blackburn, the Comptroller, is not as formal as it might have been; but we think it was sufficient to authorize the paper to be read as evidence to the jury. To the reading of the paper certified by the Comptroller, the counsel for the prisoner objected; but 'the Court below overruled the objection, and permitted the paper to be reajl to the jury. In this we do not think the Court erred. The duplicate receipt given by the prisoner to the Treasurer was produced in court, and proven to be in his own proper handwriting; and it was further proven, as shown by the proof in the record, that the prisoner received from the bank the $689.20, upon the check of the Treasurer, countersigned by the Comptroller.
It does not appear from the proof in the record, whether the Comptroller’s letter, added below his certificate, explanatory why the receipt was in duplicate and on file in his office, was read to the jury, or not, or if read, whether it was objected to or not. We must presume in favor of the action of the Court below, until he is put in error from the record. We see no error in the judgment of the Court below, and affirm the same.